UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELBERT BONNER,

                  Petitioner,                      Case Number 04-10254
                                                    Honorable David M. Lawson

v.

DOUGLAS VASBINDER,

                  Respondent.

_____/

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Elbert Bonner, presently confined at G. Robert Cotton Correctional Facility in Jackson, Michigan, has filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted of second-degree murder, Mich. Comp. Law § 750.317, and possession of a firearm in the commission of a felony (felony firearm), Mich. Comp. Law § 750.227b, in the Wayne County, Michigan Circuit Court. He was sentenced to two years in custody for the felony firearm conviction and a consecutive term of twenty to thirty-five years for the murder conviction. The petitioner alleges that he is incarcerated in violation of his constitutional rights to a fair and public trial due to prosecutorial misconduct, restriction of cross-examination of a prosecution witness, clearing the courtroom of some attendants during the testimony of another witness, recusal of a juror mid-trial, and denial of the effective assistance of counsel. The respondent has filed an answer to the petition asserting that the petitioner's claims are procedurally defaulted or without merit. The Court does not reach the procedural default issue, but it has determined that the claims lack merit. Therefore, the petition will be denied.

I.

The petitioner was charged with first-degree murder and felony firearm.  The charges arose from the fatal shooting of Jeffery Phillips at the corner of Peter Hunt and Holcomb Streets in Detroit, Michigan on February 26, 1997.  The trial did not occur until 2002, however, presumably because the petitioner was absent from the jurisdiction for several years.  Jamel Pennington and Phillip Neeley testified that they saw the petitioner shoot Phillips, who was unarmed.  They also testified that after Phillips fell to the ground, the petitioner fired several more shots at Phillips.  Another witness, Alexandria Neeley, testified that she saw the petitioner point a gun at Phillips, but she did not hear or see the shooting.  Ms. Neeley was ten years old at the time of trial; the trial judge ordered the courtroom cleared of the families of the petitioner and the victim during Ms. Neeley's testimony because of concerns about intimidation.  The medical examiner testified that Phillips died from multiple gunshot wounds, several of which were visible on his back.

The petitioner did not testify or present any witnesses.  His defense was that key prosecution witnesses were not credible and that there was no reliable evidence that he killed Jeffery Phillips.  On February 11, 2002, the jury found the petitioner guilty of the lesser offense of second-degree murder and of felony firearm.  The petitioner raised his habeas claims on direct appeal from his convictions.  The Michigan Court of Appeals affirmed his convictions, *see People v. Bonner*, No. 242184 (Mich. Ct. App. Oct. 23, 2003), and on April 30, 2004, the Michigan Supreme Court denied leave to appeal.  *See People v. Bonner*, 470 Mich. 859; 680 N.W.2d 416 (2004) (table).

The petitioner filed his habeas corpus petition on September 22, 2004.  The grounds for relief read:

> I.  Elbert Bonner's Sixth Amendment right to public trial was violated where the court cleared the courtroom for the testimony of Alexandria Neeley and Defendant was also prejudiced by the implication that there was a threat.

-2-

II.      There is plain error involving improper conduct and argument by the Prosecutor.

III.    There is plain error where there is a suggestion of flight without adequate foundation and then a failure to give an adequate cautionary instruction to the jury.

IV.    Defendant was denied a fair trial and his state and federal constitutional right to confront his accuser was violated where the court limited cross-examination.

V.     Elbert Bonner was denied his right to the effective assistance of counsel where his attorney failed to seek a cautionary instruction regarding flight and failed to object to various acts of prosecutorial misconduct.

VI.    The trial court erred by excusing a juror during trial for no sufficient basis.

Ptn. at 3-5. The petitioner's seventh "claim" is not an independent claim, but an argument that the state court rulings and decisions were contrary to Supreme Court precedent.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).  Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable."  *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000); internal quotes omitted).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1) (providing that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409.  The Court

defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask
> whether the state court's application of clearly established federal law was
> objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect*
> application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application"
> clause, then, a federal habeas court may not issue the writ simply because that court
> concludes in its independent judgment that the relevant state-court decision applied
> clearly established federal law erroneously or incorrectly.  Rather, that application
> must also be unreasonable.

*Id.* at 409, 410-11.  *See also King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408

F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v.*

*Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## A.

The petitioner alleges in his first habeas claim that his Sixth Amendment right to a public

trial was violated when the trial court cleared the courtroom for the testimony of Alexandria Neeley.

The petitioner contends that clearing the courtroom and the prosecutor's comment that the

courtroom was not safe sent a prejudicial message to the jurors that he was dangerous or was

intimidating witnesses.

The record shows that the trial court closed the courtroom to most but not all observers while

ten-year-old Alexandria Neeley testified.  The prosecutor initially did not want Alexandria to testify.

He claimed that Alexandria's testimony might be harmful to her mental well-being.  After a brief

hearing outside the jury's presence, defense counsel stated that he wanted Alexandria to testify

because he expected her to provide helpful evidence to the defense.  The trial court ruled that

Alexandria would testify because she possessed important information, she had a good memory, and she was both credible and competent.

The trial then adjourned for several days due to the death of the prosecutor's mother. When the trial resumed, the prosecutor stated that Alexandria still lived in the same community as the victim and the petitioner, and there had been allegations of threats directed toward her mother and her entire family. The prosecutor expressed concern about Alexandria's ability to testify in a crowded courtroom, and he asked to have the courtroom cleared of the petitioner's family and Alexandria's family, but not the victim's advocate, who had met Alexandria. Defense counsel objected to clearing the courtroom of both families, but he stated that if the court disagreed with his position, he would not object to having the victim's advocate present. He did not want Alexandria's mother to be present because he contemplated calling her as a witness.

The trial court granted the prosecution's motion. The families were removed, but the victim's advocate and people unrelated to the case were permitted to remain in the courtroom. Alexandria then testified that, on the day in question, she saw the petitioner point a gun at her uncle (decedent Jeffery Phillips), but she did not hear or observe the shooting.

The Michigan Court of Appeals adjudicated the petitioner's constitutional claim on the merits and determined that a substantial and compelling interest was shown for the partial closure and that the petitioner's right to a public trial was not violated.

The Sixth Amendment to the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . public trial . . . ." U.S. Const. amend. VI. "The central aim of a criminal proceeding must be to try the accused fairly, and '[the Supreme Court's] cases have uniformly recognized the public-trial guarantee as one created for the benefit

of the defendant.'"  *Waller v. Georgia*, 467 U.S. 39, 46 (1984) (quoting *Gannett Co. v. DePasquale*,

443 U.S. 368, 380 (1979)).  "While the benefits of a public trial are frequently intangible, difficult

to prove, or a matter of chance," a public trial discourages perjury, encourages witnesses to come

forward, and ensures that the judge and the prosecutor carry out their duties responsibly.  *Id*. at 46

and 49 n.9.

  The Supreme Court has recognized that in some limited circumstances, closing the

courtroom to the public can be justified.  However,

> [t]he presumption of openness may be overcome only by an overriding interest based
> on findings that closure is essential to preserve higher values and is narrowly tailored
> to serve that interest.  The interest is to be articulated along with findings specific
> enough that a reviewing court can determine whether the closure order was properly
> entered.

*Press-Enterprise Co. v. Superior Ct. of Ca.*, 464 U.S. 501, 510 (1984).  In *Waller*, the Court set forth

four factors that must be evaluated when determining whether closure can be permitted:

> [T]he party seeking to close the hearing must advance an overriding interest that is
> likely to be prejudiced, the closure must be no broader than necessary to protect that
> interest, the trial court must consider reasonable alternatives to closing the
> proceeding, and it must make findings adequate to support the closure.

*Waller*, 467 U.S. at 48.

  In this case, members of the public were not excluded from the courtroom, so the record does

not support the characterization that the trial was completely closed.  The Court has not been able

to find an instance where the Sixth Circuit has addressed a partial closure of a criminal trial.  In

*United States v. Smith*, 426 F.3d 567 (2d Cir. 2005), the Second Circuit discussed a case in which

the defendant alleged that a photo identification policy at the federal courthouse resulted in the

exclusion of some of his family members from his criminal trial.  The court observed that "this

Circuit and others have held that where a narrow, 'partial closure' occurs, the first *Waller* factor is

less rigorous. In such cases, there must only be a 'substantial reason,' rather than an 'overriding interest' justifying the closure." *Id.* at 571 (citing *Woods v. Kuhlmann,* 977 F.2d 74, 76 (2d Cir. 1992); *United States v. Sherlock,* 962 F.2d 1349, 1357 (9th Cir. 1992) (as amended); *Nieto v. Sullivan,* 879 F.2d 743, 753 (10th Cir. 1989); and *Douglas v. Wainwright,* 739 F.2d 531, 533 (11th Cir. 1984)).

The Supreme Court has included the denial of the right to a public trial among the list of structural errors that are not subject to a harmless error analysis. *United States v. Gonzales-Lopez*, __ U.S. __, __, 126 S. Ct. 2557, 2564 (2006).

Addressing the first factor, the Court agrees with the reasoning that when the closure is relatively narrow, the burden of showing a substantial reason is not a heavy one. *Smith*, 426 F.3d at 573. The closure here was relatively narrow: the court excluded only the petitioner's family and Alexandria's (i.e. the victim's) family. The closure advanced the substantial interest of enabling Alexandria to testify in the absence of people whose presence might have influenced her testimony, some of whom may have threatened her family and might have tried to intimidate her. The justification for this measure was to assist in the truth-seeking process, and it was a measured and balanced response to the reports of threats against the young witness.

The second factor stated in *Waller* requires showing that the closure was no broader than necessary to protect the interest involved. When determining whether a closure was board or narrow, courts may consider a variety of factors, including "its duration, whether the public can learn what transpired while the trial was closed (e.g. through transcripts), whether the evidence was essential, and whether selected members of the public were barred from the courtroom, or whether all spectators were excluded." *Smith*, 426 F.3d at 571 (internal quotes and citations omitted). The

closure here was narrowly tailored to protect Alexandria. The courtroom was never closed entirely, and the restriction on attendance occurred only for Alexandria's testimony. The only persons excluded from the courtroom apparently were the victim's and the petitioner's families. The evidence that Alexandria provided was important, but the jury was not informed of the closure, and the transcript of trial became public record and is contained in the record before this Court.

The third factor, that the trial court considered reasonable alternatives to closure of the proceeding, is reflected in the limited – as opposed to complete – closure ordered by the trial court. The court opted to close the proceedings to a limited number of people and for a small portion of the trial.

The fourth factor addresses the trial court's findings in support of the closure. In this case, the trial court noted that Alexandria was young, that the crime occurred in a neighborhood where the residents knew everybody, and that the possibility of intimidation was great. The court was persuaded to exclude certain people from the courtroom to assist in the truth-seeking process by eliminating the influence on the young witness that might be brought to bear by her own family motivated to demand retribution against the petitioner or from the hostility of the petitioner's family who might want to silence her. These findings were adequate to support the partial closure.

After considering the four factors outlined by the Supreme Court in *Waller*, the Court cannot conclude that the state court of appeals's determination that there was no violation of the petitioner's right to a public trial  was contrary to or an unreasonable application of Supreme Court precedent.

## B.

The second and third habeas claims allege prosecutorial misconduct. The petitioner contends that the  prosecutor (1) elicited innuendo of a threat made by the petitioner, (2) made the comment

that the courtroom was not safe, (3) elicited testimony that Jermaine Hart was shown a single photo of the petitioner, which implied that the petitioner had a prior encounter with law enforcement, (4) elicited testimony that the petitioner was a narcotics dealer and used an alias, (5) denigrated defense counsel, (6) vouched  for Jermaine Hart's credibility, and (7) stated that the petitioner had fled the jurisdiction.

The Michigan Court of Appeals reviewed these claims on the merits, although it applied a plain error standard to some of them because the petitioner did not object during trial.  The court of appeals concluded that none of the alleged errors warranted reversal.

 The respondent argues that the petitioner procedurally defaulted some of his prosecutorial-misconduct claims by not objecting to them at trial.  He contends that the Court may not consider procedurally defaulted claims unless "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  However, procedural default is not a jurisdictional bar to review of the merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  The Court deems it more efficient in this case to proceed directly to the merits of the petitioner's claims.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Prosecutorial misconduct will form the basis for habeas relief only if the conduct

-10-

was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation"). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The first question to consider is whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley,* 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the court must consider whether the improper acts were so flagrant as to warrant reversal. *Id*. at 516. The Sixth Circuit has identified four factors to consider when analyzing conduct for flagrancy: "1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *United States v. Carroll*, 26 F.3d 1380, 1385-87 (6th Cir. 1994)).

"[T]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle*, 457 F.3d at 516 (alteration in original) (quoting *Donnelly*, 416 U.S. at 645). Such claims are subject to the harmless error analysis

of *Brecht v. Abrahamson,* 507 U.S. 619, 638 (1993) (finding an error alleged on habeas to be harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict"). *See Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005).

The petitioner first argues that the prosecutor elicited innuendo of a threat he made. The innuendo occurred when the prosecutor asked the victim's mother, Dorothy Phillips, about a telephone call that she received a few days before the murder. Ms. Phillips testified that the petitioner had called and asked where her son was. When the prosecutor asked how she knew it was the petitioner calling, Ms. Phillips answered, "Nobody, nobody ever, ever have called my house with a threat like that." (Tr. Jan. 28, 2002, at 163.)

The prosecutor cannot be faulted for Ms. Phillips' unresponsive answer to a legitimate question. The prosecutor's question was not improper. Moreover, Ms. Phillips stated four times during her testimony that she really had not recognized and did not know the voice; the elicited remark was harmless.

Next, the petitioner criticizes the prosecutor's statement on the second day of trial that the courtroom was not safe. The petitioner interprets this comment to mean that the testifying witness was placed in jeopardy by moving too close to the defendant who was dangerous and violent. Whether that is what the prosecutor meant by his comment is not clear from the record. The prosecutor made the comment after defense counsel asked prosecution witness Jamel Pennington to step off the witness stand and write her initials on the chalkboard, indicating where she had seen the petitioner. The transcript reads:

> Q [by Mr. Harris, defense counsel]. [W]ould you mind coming from the witness stand and just putting the initial of J.P. where you saw him on this chalkboard, please?

-12-

[The prosecutor]:  Your Honor, . . .  I don't know if the witness is comfortable moving in a possession (sic) as such.  I mean the courtroom is not safe.

THE COURT:  Yeah.  The idea was to move that board up a little further.  Okay. Tilt it a little more, Mr. Harris, towards the jury, too, if you would, please.  No -- but fruther (sic), further to my right.  There you go.  I think that's a better possession (sic).

MR. HARRIS:  That better.  Everybody can see?

THE COURT:  All right.  Ms. Pennington, you may step down and just indicate what Mr. Harris asked you to indicate on the board.

Tr. Jan. 29, 2002, at 20.

The prosecutor's comment was ambiguous.  It is not clear from the record whether he was referring to a person or persons or to an object, such as the blackboard, or to the general physical condition of the courtroom.  In any event, he did not say that the petitioner or anyone in the courtroom was dangerous or a threat to the witness, and the petitioner did not object to the exchange. Even if the prosecutor was making that suggestion, the statement was a fleeting comment, and the jury likely was not misled by it.  Nor did the comment likely prejudice the petitioner, given the witness's other testimony about her concern for her safety after the shooting. Ms. Pennington subsequently testified that she did not approach the police immediately after the shooting because she feared for her life.  She further testified that she informed the police that she thought she should leave the neighborhood to protect herself and her child.  In light of this testimony, which tended to reflect negatively on the petitioner or his supporters, the prosecutor's comment about the courtroom being unsafe was harmless.

The petitioner alleges next that the prosecutor elicited testimony that Jermaine Hart was shown a single photo of the petitioner for the purpose of identifying the shooter.  The petitioner

-13-

contends that Hart likely was shown a mugshot, which suggested that the petitioner had a criminal record.

Hart's remark that he thought he was shown one photograph was a fleeting comment in a long trial. No further reference was made to the comment, and the phrase "mug shot" was not used. Nor was the petitioner's criminal record brought up. Furthermore, Hart claimed that he informed the police that the person in the photograph was not the shooter. Hart also testified that he did not observe the victim get shot and did not see the petitioner on the day of the shooting. The prosecutor's question to the witness about the identification photo was not improper, and the Court can find no conceivable prejudice that flowed from Hart's answer, which was virtually worthless to the prosecution.

The petitioner also complains that the prosecutor elicited testimony that the petitioner was a drug dealer and used an alias. This claim has no merit, because

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. . . . While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003). This claim of misconduct related to the admission of evidence, but because there is no Supreme Court decision holding that the admission of similar acts evidence violates the Constitution, the state court's conclusion that there was no prosecutorial misconduct, cannot be deemed "contrary to" Supreme Court precedent under AEDPA. Furthermore, the references to the petitioner's alias were relatively brief and insignificant, and the trial court stated that the jury should not use evidence of the petitioner's involvement with narcotics when determining the petitioner's guilt or innocence.

-14-

The petitioner asserts next that the prosecutor denigrated defense counsel. The petitioner has not explained how the prosecutor denigrated the defense, but he has cited to a portion of the record where the prosecutor described defense counsel's closing argument as a magic show, a distraction, and "a smoking mirror." Although prosecutors may not "make unfounded and inflammatory attacks on the opposing advocate," *United States v. Young*, 470 U.S. 1, 9 (1985), the comments in dispute here occurred during the prosecutor's rebuttal argument and were directed at the substance of the defense argument itself. Prosecutors ordinarily are "entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel," *Angel,* 682 F.2d at 607-08, as well as to the defense's trial strategy. *Slagle*, 457 F.3d at 522; *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). The Court does not find that the prosecutor's remarks were inappropriate or exceeded the bounds of fair advocacy. In addition, the jury was instructed that the attorneys' arguments were not evidence. The prosecutor's closing argument did not abridge the petitioner's fair trial right.

The petitioner alleges that the prosecutor vouched  for Jermaine Hart's credibility by claiming that his statement to the police was true. Prosecutors may not vouch for witnesses by interjecting their personal beliefs into the presentation of their cases. *Young*, 470 U.S. at 8-9. The Sixth Circuit has explained:

> Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness. *See, e.g.,Taylor v. United States,* 985 F.2d 844, 846 (6th Cir. 1993); *United States v. Martinez,* 981 F.2d 867, 871 (6th Cir. 1992). Generally, improper vouching involves either blunt comments, *see, e.g., United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992) (stating that improper vouching occurred when prosecutor asserted own belief in witness's credibility through comments including "I think he [the witness] was candid. I think he is honest."), or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and

-15-

truthfulness of witnesses and their testimony, *see, e.g., Carroll* 26 F.3d at 1388 (stating that improper vouching occurred when prosecutor argued that the witness testifying under a plea agreement was in jeopardy if the court or government did not find the testimony truthful).

*United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999).

The prosecutor did not actually vouch for Hart or say that Hart's statement to the police was true. He said,

We've got three eye witnesses. We actually had four, but one tried to say he didn't see it now or he didn't say that. But even Mr. Jeffery Phillips said that Mr. Jermaine Hart was out there.

Tr. Feb. 8, 2002, at 108.

This was an obvious misstatement. Jeffery Phillips was the victim, and Phillip Neeley testified that he saw Jermaine Hart at the time of the shooting. Thus, the prosecutor must have meant to say that "even Mr. *Phillip Neeley* said that Mr. Jermaine Hart was out there." In any event, the prosecutor's statement accurately reflected the fact that Jermaine Hart's trial testimony differed from his statement to the police. The remark was a fair comment on the evidence. To the extent that it suggested Hart lied on the witness stand, the remark was proper in light of Lieutenant Anthony Woodford's testimony that Hart informed him that he witnessed the shooting and that the petitioner shot the complainant. Lieutenant Woodford further testified that he wrote down Hart's answers to his questions and that Hart read the statement before signing it.

The petitioner next alleges that he was denied due process and a fair trial by the prosecutor's comment in his opening statement that if the jurors were wondering why the case was old, the reason was that the petitioner had fled the jurisdiction. The petitioner alleges that the prosecutor insinuated he was guilty because he had been hiding since 1997. The petitioner argues that the prosecutor did not present an adequate foundation for evidence of flight, and because the trial court did not give

-16-

a jury instruction on flight, the jury was left with the impression that they could use evidence of flight as substantive evidence rather than as consciousness of guilt.

"'Flight evidence comes in as an admission of guilt by conduct.'  Courts, however, have 'consistently doubted the probative value in criminal trials' of flight evidence." *United States v. Oliver,* 397 F.3d 369, 376 (6th Cir. 2005) (quoting *United States v. Dillon*, 870 F.2d 1125, 1126 (6th Cir. 1989), and *Wong Sun v. United States,* 371 U.S. 471, 483 n.10 (1963)).  In Michigan, such evidence sometimes is allowed to show consciousness of guilt.  *See People v. Coleman,* 210 Mich. App. 1, 4, 532 N.W.2d 885, 887 (1995).

There was evidence that the petitioner left the crime scene after the shooting, and that the police learned the identity of the shooter from witnesses in the neighborhood the following day.  The case was not brought to trial until five years later.  A police detention officer testified that a warrant was issued for the petitioner's arrest and that a private transportation agency, which arrests people on extradition warrants, transferred custody of the petitioner to the detention officer on March 1, 2001.  Although there was no evidence that the petitioner knew charges had been brought against him or that he fled the jurisdiction to evade prosecution, the prosecutor's comment was a reasonable inference from the record.  The Court finds that the remark was not improper, and it was brief and isolated and likely did not mislead the jury or prejudice the petitioner in light of all the other evidence.

The Court concludes, therefore, that the prosecutor's questions and comments either were proper or were not flagrant.  Some of the questions elicited unresponsive answers, and although other comments no doubt were deliberate, they were not extended,  likely to mislead the jury, or prejudice the petitioner.  Moreover, the evidence against the petitioner was overwhelming and one-

-17-

sided.  The prosecutor's conduct did not deprive the petitioner of due process or a fair trial, and the state court's rejection of the petitioner's prosecutorial-misconduct claims was not contrary to or an unreasonable application of Supreme Court precedent.

### C.

The fourth habeas claim alleges that the petitioner was denied a fair trial and his constitutional right to confront witnesses when the trial court limited his attorney's cross-examination of Jamel Pennington.  The limitation on defense counsel's cross-examination occurred when counsel asked Ms. Pennington whether she had been using drugs on or about the date of the murder.  The prosecutor objected before Pennington could answer the question.  When the trial court asked  about the relevance of the question, defense counsel suggested that Ms. Pennington's observations might be questionable, depending on how she answered.  The trial court then permitted defense counsel to ask the witness whether she was under the influence of drugs or alcohol when she made the observation about which she testified.  Ms. Pennington responded that she was not under the influence at the time.  Defense counsel then asked, "Have you used . . . ?"  The prosecutor objected before defense counsel could finish his question, and the trial court sustained the objection. (Tr. Jan. 29, 2002, at 77-78.)

The Michigan Court of Appeals adjudicated this constitutional claim on the merits and concluded that the trial court correctly limited the cross-examination of Pennington.

The Sixth Circuit recently re-emphasized that cross-examination is a vital aspect to an accused's rights under the Confrontation Clause, but the right to cross-examine is not limitless. *Stewart v. Wolfenbarger*, __ F.3d __, __, No. 04-2419, 2006 WL 3230286, at *5-6 (6th Cir. Nov. 9, 2006).

-18-

> [T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And, as we observed earlier this Term, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

*Delaware v. Van Arsdale*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)).

When the state judge merely limits cross-examination (as opposed to outright denial of that right), "the inquiry for the reviewing court is 'whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory.'" *Stewart*, 2006 WL 3230286, at *6 (quoting *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989)). The pivotal point, according to the Sixth Circuit, is whether "the defense is not allowed to plac[e] before the jury *facts* from which bias, prejudice or lack of credibility of a prosecution witness might be inferred." *Dorsey*, 872 F.2d at 167 (alteration in original) (internal quotation marks omitted). There is no violation of the Confrontation Clause "where the questioning that was barred was not aimed at eliciting any additional facts." *Id.* at 166.

The petitioner claims that he should have been allowed to attack Ms. Pennington's credibility concerning her ability to perceive, describe, and recall the events in question by asking about her use of drugs. The record shows that he was given that opportunity. Although he was not permitted to pursue the matter beyond an initial question, "it is the state's prerogative to define what evidence is relevant to the case in the first place." *Miskel v. Karnes*, 397 F.3d 446, 452 (6th Cir. 2005) (citing *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979)). The jury had enough information, despite the limits placed on defense counsel, to assess the defense theory that Ms. Pennington was not a credible

-19-

witness, did not see what really happened, and coached her daughter to implicate the petitioner in the shooting. Any omitted evidence concerning Pennington's possible use of drugs, when evaluated in the context of the entire record, fails to "create[] a reasonable doubt that did not otherwise exist." *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (quoting *Washington v. Shriver*, 255 F.3d 45, 57 (2d Cir. 2001)). The petitioner was not denied a fair trial or his constitutional right to confront witnesses when the trial court limited his cross examination of Jamel Pennington.

### D.

The petitioner alleges that his attorney was ineffective for failing to seek a cautionary instruction on flight and for failing to object to the prosecutor's misconduct. Although defense counsel objected to some of the prosecutor's misconduct, the petitioner claims that there was no good reason for not objecting to the balance of the misconduct.

To show a violation of the right to effective assistance of counsel, a petitioner must establish first that his attorney's performance was deficient "in that it fell below an objective standard of reasonableness." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). An attorney's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

The petitioner also must demonstrate prejudice, that is, show that counsel's deficient performance may have altered the results of the trial. *Id*. An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The defendant must show "a reasonable probability that, but

-20-

for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

Defense counsel's failure to request a jury instruction on flight was objectively reasonable and can be relegated to sound trial strategy.  The prosecutor made only a brief reference to flight, and the detention officer who accepted custody of the petitioner gave no indication that the petitioner had been hiding prior to his arrest.  A jury instruction on the topic would have emphasized the issue of flight in the jurors' minds, and the decision to forego the instruction was not objectively unreasonable.

As for the prosecutor's comments, defense counsel did object to the innuendo of a threat and to the testimony about the petitioner selling narcotics.  His failure to object to other comments made by the prosecutor did not amount to deficient performance because the comments either were proper or did not constitute flagrant misconduct.  There is not a reasonable probability that, but for failure to object, the outcome of the trial would have been different.  Thus, the state court's conclusion that defense counsel was not constitutionally ineffective did not result in an unreasonable application of *Strickland*.

E.

The sixth and final claim alleges that the trial court erred by excusing a juror during trial after the juror recognized prosecution witness Jamel Pennington.  According to the petitioner, there was an insufficient basis for excusing the juror.

The record shows that midway through trial, juror Randall informed the trial court that she recognized Jamel Pennington, who had testified for the prosecution on the previous day.  Mrs. Randall thought that she had been in contact with Ms. Pennington when Pennington applied for Social Security benefits.  Ms. Pennington informed the trial court outside the presence of the other jurors that she did not receive benefits, but that she did apply for them and that she remembered Mrs. Randall.  Mrs. Randall assured the trial court that she had formed no opinion of Ms. Pennington.  However, she claimed that her job required her to record her observations of applicants and whether she thought the applicant had a valid disability claim.  She could not recall forming an opinion as to Ms. Pennington's truthfulness.

Defense counsel objected to excusing Mrs. Randall, although he acknowledged that the decision was discretionary with the trial court.  The trial court excused Mrs. Randall, explaining that Mrs. Randall had been asked to sit in judgment of Ms. Pennington's credibility on a prior occasion and that her evaluation of Ms. Pennington was potentially damaging.

The trial court subsequently informed the remaining jurors that Mrs. Randall had been excused due to an unforeseeable circumstance, which she had brought to the court's attention.  The court stated that it had excused Mrs. Randall in the best interest of all concerned, and charged the jurors not to concern themselves with the reason.  The jurors, in turn, assured the trial court that Mrs. Randall did not discuss the issue with them.

The Michigan Court of Appeals reviewed this claim on the merits and concluded that the trial court did not abuse its discretion in excusing Mrs. Randall.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant a trial by an impartial jury. *Morgan v. Illinois*, 504 U.S. 719, 726-27 (1992). "'In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, "indifferent" jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). The presence of even a single biased juror deprives a defendant of his right to an impartial jury. *See Morgan*, 504 U.S. at 729." *Williams v. Bagley*, 380 F.3d 932, 943-44 (6th Cir. 2004). A "trial court has discretion to question a juror whose qualifications have been called into doubt during trial in order to resolve the problem and ensure a fair and competent jury." *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994) (citing *United States v. Campbell,* 845 F.2d 782, 785 (8th Cir. 1988)).

The petitioner has not alleged that the trial court's decision violated his constitutional rights. He does allege that the trial court excused the juror on insufficient grounds, but this Court cannot conclude that the decision exceeded the bounds of discretion. Mrs. Randall's assessment of Ms. Pennington's credibility could have been affected by her prior contact with Ms. Pennington. Because Ms. Pennington was a key witness for the prosecution, the trial court wisely decided to excuse Mrs. Randall as one of two alternate jurors. The petitioner's right to a fair trial and an impartial jury was not violated by excusing Mrs. Randall.

IV.

The state appellate court's decision in this case was neither contrary to nor an unreasonable application of federal law, and the decision did not amount to an unreasonable determination of the facts.

-23-

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.


s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  December 4, 2006

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on December 4, 2006.

s/Felicia M. Moses
FELICIA M. MOSES